IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-0628 |
| ) | Judge Trauger |
| TRS RECOVERY SERVICES, INC., ) | |
| TELECHECK RECOVERY SERVICES, INC., ) | |
| TELECHECK SERVICES, INC., ) | |
| TELECHECK INTERNATIONAL, INC. ) | |
| and FIRST DATA CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER CLARIFYING
MEMORANDUM ISSUED NOVEMBER 14, 2007 (DOCKET NO. 40)**

The defendants have filed a Motion for Reconsideration or, in the Alternative, Certification of an Interlocutory Appeal (Docket No. 43), to which the plaintiff has responded (Docket No. 52).

**FACTS**

The facts of the case were discussed in detail in the previous ruling on the defendants' motion to dismiss, which was converted into a motion for summary judgment. (Docket No. 40.) For purposes of this motion, the relevant facts are as follows:

The defendants provide check verification and check guarantee services to merchants. To assist them in doing so, they maintain files containing data about consumers, such as the plaintiff, and determine whether their customer merchants should accept or decline particular checks written by particular consumers.

1

On March 9, 2003, the plaintiff bounced a check written to Swim 'n Sport (the "Swim 'n Sport Check"). On August 22 and August 29, 2003, the plaintiff attempted to write checks at Hecht's and Borders, respectively, and those checks were declined by those merchants on the basis of the defendants' determination that the checks should not be accepted. The plaintiff attempted to determine why those checks had been declined and to obtain information from the defendants about the information contained in her file, but the defendants refused to provide her with the information she requested. The defendants' alleged failure to provide the plaintiff with this information is the basis for another lawsuit brought by the plaintiff against certain of the defendants claiming violations of the Fair Credit Reporting Act (the "FCRA Lawsuit").[1]

During the course of discovery in the FCRA Lawsuit, the plaintiff sought information as to why the checks she attempted to write to Hecht's and Borders were declined. In discovery responses served in December 2005, the defendants in the FCRA Lawsuit indicated that the check she attempted to write to Hecht's was declined based, in part, on a "non-sufficient funds check [the plaintiff] had presented, and subsequently paid, shortly before the 8/22/03 transaction," but did not provide any additional details—such as the date, amount, check number, or payee—about the referenced non-sufficient funds check. The responses also included documents reflecting that information regarding the Swim 'n Sport Check remained in the plaintiff's file after that debt had been resolved.

In October 2006, also in the course of discovery in the FCRA Lawsuit, the plaintiff obtained documents subpoenaed from the Houston Better Business Bureau. Those documents indicated that the defendants represent to consumers that, once a bounced check is resolved and a

---

[1] That lawsuit is pending before Chief Judge Campbell, Case No. 3:05-633.

2

Case 3:07-cv-00628   Document 54   Filed 12/18/07   Page 2 of 9 PageID #: 822

fee paid, all derogatory information regarding that debt will be removed from the consumer's file, and that the bounced check will not negatively affect the consumer's ability to write checks. Upon reviewing these documents, the plaintiff recalled the fact that she had bounced the Swim 'n Sport Check in March 2003, and that she had resolved that debt and paid a fee to the defendants with the understanding that any derogatory information about that debt would be removed from her file and that it would not negatively affect her ability to write checks.

The plaintiff has asserted claims in this case arising under the Fair Debt Collection Practices Act ("FDCPA") and the Tennessee Consumer Protection Act ("TCPA"), alleging that the defendants falsely represented that information regarding the Swim 'n Sport Check would be removed from the plaintiff's file and would not negatively affect her ability to write checks once she resolved that debt and paid a fee. The defendants moved to dismiss those claims, arguing that they were time-barred because they claim the plaintiff knew of the facts that form the basis of her claims upon receipt of the discovery responses from the defendants in the FCRA Lawsuit in December 2005. The plaintiff argued that she first learned of the facts that form the basis of her claims upon receipt of documents from the Houston Better Business Bureau in October 2006. This court converted the motion to dismiss into a motion for summary judgment and held that the plaintiff's FDCPA and TCPA claims were not time-barred because it was not until October 2006 that the plaintiff was aware that the defendant's representations were "knowingly false," and because the limitations period should be equitably tolled as a result of the defendants' wrongful concealment of its actions during that time.

3

**ANALYSIS**

The defendants seek reconsideration of the previous ruling in two respects. First, they seek reconsideration or, in the alternative, certification to the Court of Appeals for the Sixth Circuit, of the ruling that the plaintiff's FDCPA and TCPA claims are not time-barred. Additionally, the defendants seek a clarification as to the nature of the findings made in the ruling.

**I.      Standard**

The Court of Appeals for the Sixth Circuit has observed that the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders" but has provided that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. Appx. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

**II.     Timeliness of FDCPA and TCPA Claims**

The defendants argue that the previous ruling should be reconsidered and revised to dismiss the plaintiff's FDCPA and TCPA claims as time-barred or, in the alternative, that the question of whether a "knowingly false" representation is a required element of a claim under

4

FDCPA should be certified to the Court of Appeals for the Sixth Circuit.² (Docket No. 44 at 3-8, 10-16.)

In the previous ruling, this court held:

> It is clear that the plaintiff became aware in March 2003 that the Swim 'n Sport Check had bounced, and that the defendants represented to her at that time that all references to the check would be removed from her file in exchange for her paying the resulting debt and a fee. Additionally, though it may well be that the plaintiff became aware as early as December 2005 that information about the Swim 'n Sport Check remained in her file contrary to the defendants' representations, there is no indication that the plaintiff knew at that time that the representation was knowingly false. The plaintiff reasonably may have believed that the information remained in her file because of an oversight or error. In fact, the defendants affirmatively represented to the plaintiff during the course of their communications that her file contained no derogatory information, and that her checks may have been declined as a result of "equipment malfunction or difficulties with the telephone line." (Docket No. 29 at Tab 1)
>
> It was only upon receipt of the BBB Documents in October 2006 that the plaintiff came to realize the likelihood that the information remained in her file *not* because of an inadvertency on the defendants' part, but rather because the defendants *never* had any intention of removing the information from her file and falsely represented to her that they would, and that knowledge is what gives rise to the plaintiff's FDCPA claim. Thus, the plaintiff has established that she first learned of the facts underlying her claim in October 2006, when she received the BBB Documents, and she filed the instant lawsuit within a year of that discovery.

(Docket No. 40 at 17-18.)

The defendants place much stock in the fact that, to state a cause of action under either FDCPA or TCPA, a plaintiff need not demonstrate intentional conduct by a defendant. *See, e.g.*, *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 569 (6th Cir. 2003) ("[T]he TCPA does not require deceptive intent, which means a plaintiff may recover damages even for negligent violations."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the [FDCPA]

---

²To the extent that the defendants take issue with the ruling that the plaintiff's TCPA claim is timely, that claim would not appropriately be certified to the Sixth Circuit regardless.

5

imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."); *Lovelace v. Stephens & Michaels Associates, Inc.*, No. 07-10956, 2007 WL 3333019, at *3 (E.D. Mich. Nov. 9, 2007) ("The FDCPA, including § 1692c(b), is a strict liability statute and therefore does not require a showing of intentional conduct on the part of a debt collector to give rise to liability.").

The defendants claim that, by holding that the limitations period only began to run upon the plaintiff's learning that the defendants' representation was "knowingly false," this court wrongly read an intent requirement into the statutes.[3] In making these arguments, the defendants have latched onto this court's use of the term "knowingly false" in describing the state of the plaintiff's knowledge of the elements of her claims. To the extent that the defendants have interpreted the term "knowingly false" as reading an intent requirement into FDCPA and TCPA, that is not the case, nor was it this court's intention. That term was simply used, perhaps inartfully, to articulate that the limitations period does not begin to run in the absence of a false representation under FDCPA or a deceptive act under TCPA.[4]

---

[3]Additionally, with respect to FDCPA, the defendants argue that, by reading an intent requirement into the statute, the previous ruling wrongly renders superfluous another provision of FDCPA that provides an affirmative defense for conduct that is not intentional and constitutes a bona fide error. *See* 15 U.S.C § 1692k(c) ("A debt collector may not be held liable . . . if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error . . . ."). As this court's holding does not read an intent requirement into the statute, as discussed *infra*, this argument is unavailing.

[4]FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Likewise, TCPA prohibits the use of "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104.

6

The representation at issue was that the information regarding the Swim 'n Sport Check *would be removed* from the plaintiff's file if the plaintiff resolved the debt and paid a fee. The fact that information regarding that check *had not been removed* when the plaintiff received the discovery responses in the FCRA Lawsuit in December 2005 does not indicate that that information would not ever be removed, nor does it indicate that the representation was false under FDCPA or deceptive under TCPA when made. As stated in the prior opinion, the information regarding the Swim 'n Sport Check may simply have remained in the plaintiff's file at that time due to an oversight or inadvertency. It was only when the plaintiff obtained documents from the Houston Better Business Bureau in October 2006 that she learned that not only had the information not been removed, but that the representation that it would be removed was false and deceptive when made, as the defendants never intended to remove the information, thus giving rise to the plaintiff's causes of action under FDCPA and TCPA.

To summarize, the alleged misrepresentations occurred in March 2003, when the defendants represented to the plaintiff that information about the Swim 'n Sport Check would be removed from her account upon the resolution of that debt and the payment of a fee. As a result of the defendants' wrongful concealment of its actions, however, the statute of limitations was equitably tolled[5] until October 2006, when the plaintiff first learned that the defendants' representation was false and deceptive when made, thus giving rise to her claims under FDCPA and TCPA.

---

[5] The previous ruling in this case concluded that the doctrine of equitable tolling is appropriate in cases arising under the FDCPA, and, furthermore, that it is applicable given the circumstances of this case. The defendants have not requested reconsideration or amendment of that portion of the ruling.

As the previous ruling, as clarified here, adheres to relevant precedent dictating that intent is not an element of a claim under either FDCPA or TCPA, there is no question of law to be certified to the Court of Appeals for the Sixth Circuit as the defendants have requested.

## II. Nature of Previous Findings

The defendants also have complained that the previous ruling did not identify those facts on which the court relied in reaching its conclusions or which facts were in dispute. (Docket No. 44 at 8.) The defendants are concerned that the ruling may be interpreted as "definitive findings of fact before discovery has occurred, including findings on issues that are clearly in dispute and which have yet to be adjudicated in this or other pending lawsuits."

The defendants have only now raised the specter of conflicts in the determination of disputed factual issues in this lawsuit and the FCRA Lawsuit, despite the fact that it was their decision to include materials outside the complaint that compelled the conversion of their motion to dismiss into a motion for summary judgment. Nevertheless, in light of the facts that there is a summary judgment motion still pending in the FCRA Lawsuit that may touch on similar factual issues and that discovery in this case has not commenced, the previous ruling will be amended to clarify that any findings in that ruling are not intended to be definitive factual findings but rather are based on the record evidence viewed in the light most favorable to the nonmoving party, as is required on a motion for summary judgment under Fed. R. Civ. P. 56.

8

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Reconsideration or, in the Alternative, Certification of an Interlocutory Appeal is **DENIED**, but the previous ruling in this matter (Docket No. 40) is **CLARIFIED** and **AMENDED** as discussed herein.

It is so Ordered.

_____
ALETA A. TRAUGER
United States District Judge